| | |
|---|---|
| Elizabeth Kristen (SBN 218227)<br>ekristen@legalaidatwork.org<br>**LEGAL AID AT WORK**<br>180 Montgomery Street, Suite 600<br>San Francisco, CA 94104<br>Telephone: (415) 864-8848 | Dana L. Cook-Milligan (SBN 301340)<br>dlcook@winston.com<br>Eric Straka (SBN 336307)<br>estraka@winston.com<br>Jacqueline Ju (SBN 352204)<br>jju@winston.com<br>**WINSTON & STRAWN LLP**<br>101 California Street, 21st Floor<br>San Francisco, CA 94111<br>Telephone: (415) 591-1000 |
| Aaron Kaufmann (SBN 148580)<br>akaufmann@kgworklaw.com<br>Elizabeth Gropman (SBN 294156)<br>egropman@kgworklaw.com<br>**KAUFMANN & GROPMAN LLP**<br>1939 Harrison Street, Suite 620<br>Oakland, CA 94612<br>Telephone: (510) 817-4380 | Julianna Gesiotto (SBN 346885)<br>julianna.gesiotto@cwlc.org<br>**CALIFORNIA WOMEN'S LAW CENTER**<br>360 N. Pacific Coast Highway, Suite 2070<br>El Segundo, CA 90245<br>Telephone: (323) 951-104<br><br>*Attorneys for Plaintiffs* |
| Diana Hughes Leiden (SBN 267606)<br>dhleiden@winston.com<br>Whitney Williams (SBN 335384)<br>whwilliams@winston.com<br>**WINSTON & STRAWN LLP**<br>333 South Grand Avenue, 38th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 615-1700 | |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| J.D., by and through her next friend TIFFINY BARRACO; A.D., by and through her next friend ANNA KUSSMAUL; A.R., by and through her next friend DANNY RODRIGUEZ; and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MT. DIABLO UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | Case No. 3:24-cv-00908-JD<br><br>**NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**<br><br>Hearing Date:  March 13, 2025<br>Time:  10:00 a.m.<br>Place:  Courtroom 11, 19th Floor<br>Judge:  Hon. James Donato |

# NOTICE OF UNOPPPOSED MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 13, 2025, in Courtroom 11 of the Honorable James Donato of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Class Plaintiffs J.D., by and through her next friend TIFFINY BARRACO; Ava Davis ("A.D."), by and through her next friend ANNA KUSSMAUL; A.R., by and through her next friend DANNY RODRIGUEZ; and all others similarly situated (collectively, "Plaintiffs") will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 23 ("Rule 23") for an order:

1. Preliminarily approving a proposed class action settlement agreement between Plaintiffs and Defendant MT. DIABLO UNIFIED SCHOOL DISTRICT ("Defendant;" collectively with Plaintiffs, the "Parties");
2. Directing notice to the Class Members and approving the manner and form of said notice; and
3. Scheduling a final hearing to determine whether the settlement agreement is fair, reasonable, and adequate under Rule 23, subdivision (e)(2) (the "Fairness Hearing").

The proposed settlement agreement provides substantial benefits to the entire class. This motion is unopposed, as Defendant's counsel has reviewed the draft of the Unopposed Motion for Preliminary Settlement Approval and has confirmed that they do not oppose it. Declaration of Diana H. Leiden in Support of Motion ("Leiden Decl.") ¶ 16. This Notice of Unopposed Motion and Motion for Preliminary Settlement Approval is based on the following memorandum of points and authorities, the attached declaration and exhibits, the pleadings and papers on file in this action, and such other matters as the Court may consider.

Dated: February 6, 2025

**WINSTON & STRAWN LLP**

By */s/ Diana Hughes Leiden*
Diana Hughes Leiden

*Attorney for Plaintiffs*

# TABLE OF CONTENTS

Page

1. INTRODUCTION ................................................................................................................. 1
2. NATURE OF THE CASE ..................................................................................................... 2
3. TERMS OF THE PROPOSED SETTLEMENT .................................................................. 3
   A. Settlement Class (Ex. A § I.B) ................................................................................. 3
   B. Settlement Consideration and Release of Claims (Ex. A § II.D) ............................. 3
   C. Training and Professional Development (Ex. A § III.B) ......................................... 3
   D. Equal Treatment and Benefits (Ex. A § III.C) ......................................................... 4
   E. Equal Participation Opportunities (Ex. A § III.D) ................................................... 4
   F. Title IX Compliance and Monitoring Plan (Ex. A § III.E) ...................................... 5
4. THE PROPOSED SETTLEMENT MEETS RULE 23(E) FOR FAIRNESS, REASONABLENESS, AND ADEQUACY ......................................................................... 7
   A. Named Plaintiffs and Class Counsel Adequately Represented the Class. ............... 8
   B. The Settlement Agreement resulted from arm's-length negotiations. ...................... 9
   C. The Settlement provides extraordinary relief for the Class Members. .................... 9
   D. The Settlement treats Class Members Equitably ................................................... 10
5. PROPOSED NOTICE TO CLASS SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS .............................................................................................................. 11
6. CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.B. v. Haw. State Dep't Educ.*,
   No. 1:18CV00477, Dkt. 331-1 (D. Haw. Mar. 5, 2024) .................................................... 10

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................................. 12

*Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*,
   533 F. Supp. 3d 881 (N.D. Cal. 2020) ............................................................................... 11

*Garner v. State Farm Mut. Auto Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................................................................. 10

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
   21 F.4th 1102 (9th Cir. 2021) ............................................................................................ 11

*In re Google LLC St. View Elec. Commc'ns Litig.*,
   611 F. Supp. 3d 872 (N.D. Cal. 2020) ............................................................................... 11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950). Notice ............................................................................................. 11

*Nitsch v. DreamWorks Animation SKG Inc.*,
   2017 WL 399221 (N.D. Cal. Jan. 19, 2017) ....................................................................... 8

*Vasquez v. USM Inc.*,
   2015 WL 12857082 (N.D. Cal. Apr. 13, 2015) .................................................................. 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   229 F. Supp. 3d 1052 (N.D. Cal. 2017) .............................................................................. 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) ........................................................................................... 8, 9

*Working et al. v. Lake Oswego Sch. Dist.*,
   No. 3:16CV00581, Dkt. 48 (D.Or. Oct. 3, 2017) .............................................................. 10

**Statutes**

Title IX of the Education Amendments of 1972 ............................................................. *passim*

**Other Authorities**

34 C.F.R. § 106.41(c) ............................................................................................................. 4

| | |
|---|---|
| 34 C.F.R. § 106.41(c)(1)–(10) | 3 |
| Fed. R. Civ. P. 23 | 1, 11 |
| Fed. R. Civ. P. 23(c)(2)(B) | 12 |
| Fed. R. Civ. P. 23(c)(3) | 8 |
| Fed. R. Civ. P. 23(e) | 8 |
| Fed. R. Civ. P. 23(e)(1) | 9, 10, 11 |
| Fed. R. Civ. P. 23(e)(2) | 8 |
| Fed. R. Civ. P. 23(e)(2)(C) | 10, 11 |
| Fed. R. Civ. P. 23(e)(2)(D) | 11 |
| Fed. R. Civ. P. 54 | 2 |
| Procedural Guidance for Class Action Settlments, https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ | 3 |

## 1. INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek preliminary approval of a settlement providing injunctive relief on behalf of the certified class of "present and future College Park High School ('CPHS') female students and potential students who participate, seek to participate, and/or are or were deterred from participating in athletics at CPHS (the 'Class'.)" Dkt. 23. Plaintiffs' complaint alleged that Defendant had violated Title IX of the Education Amendments of 1972 ("Title IX") by failing to provide equal treatment and benefits, as well as equal participation opportunities to female athletes. The proposed Settlement Agreement ("Settlement") was reached in arm's-length settlement negotiations during a mediation led by Title IX expert and investigator Amy Klosterman, followed by continued negotiations with and without Ms. Klosterman's assistance. Declaration of Diana H. Leiden in Support of Motion ("Leiden Decl."), Exhibit A ¶¶ 9-11.[1] The Settlement ensures both equal athletic participation opportunities and equal treatment and benefits to the certified class of female student athletes at College Park High School ("CPHS"); and avoids further risk, uncertainty, and expense of continued litigation. Accordingly, Plaintiffs respectfully request that this Court enter an order to:

1. Grant preliminary approval of the proposed Settlement between the Parties;

2. Direct and approve a class notice in the form provided in Attachment D to Exhibit A, to be distributed (i) individually to each member of the class and (ii) posted on the CPHS website and the District's website;

3. Schedule the Fairness Hearing on the proposed Settlement, and set related deadlines as follows, subject to the Court's calendar availability:

| | |
|---|---|
| Deadline for Class Notice to be published, distributed, and posted as provided above | 35 days prior to the Fairness Hearing |
| Deadline for filing Unopposed Motion for Final Approval of Settlement | 21 days prior to the Fairness Hearing |
| Deadline for Class Members to comment on the proposed Settlement | Postmarked letter to Court by 7 days prior to Fairness Hearing |
| Fairness Hearing | TBD by the Court |

---

[1] Unless otherwise noted, all exhibits referenced in this motion are attached to the Declaration of Diana H. Leiden in Support of Unopposed Motion for Preliminary Settlement Approval.

That Parties disagree on the appropriate amount of attorneys' fees, which remain unresolved as part of this Settlement. However, "[t]he Parties agree that Plaintiffs are the 'prevailing party' for purposes of recovery of reasonable attorneys' fees, costs, and expenses." *See* Ex. A § II.B.1. Therefore, Plaintiffs do *not* seek preliminary approval of a specific fee amount and will file a motion for fees and costs at an agreed upon time, no later than 14 days after final approval of this Settlement is granted, pursuant to Federal Rule of Civil Procedure 54.

**2.      NATURE OF THE CASE**

On February 15, 2024, J.D., A.D., and A.R. initiated a class action against Defendant in this Court, designated Case No. 3:24-cv-00908 ("the Action"), alleging various violations of Title IX, including, but not limited to, unequal treatment and benefits provided to female athletes, and unequal participation opportunities afforded to female athletes. Plaintiffs brought two claims for relief. The first claim for relief is based on Plaintiffs' allegation that Defendant's unequal provision of treatment and benefits for girls in the CPHS athletics program violated Title IX. The second claim for relief is based on Plaintiffs' allegation that Defendant provided girls with unequal participation opportunities in the CPHS athletics program in violation of Title IX.

On May 20, 2024, Plaintiffs filed a Motion for Class Certification (Dkt. 23), which Defendant did not oppose. Dkt. 25. On May 23, 2024, the Court certified (Dkt. 26, Minute Order) the following class in the Action: "All present and future College Park High School ('CPHS') female students and potential students who participate, seek to participate, and/or are or were deterred from participating in athletics at CPHS (the 'Class'.)" Dkt. 23.

On July 22, 2024, the Parties conducted a full-day site visit with mediator Amy Klosterman, a former United States Department of Education, Office for Civil Rights Attorney. Leiden Decl. ¶ 8. Shortly thereafter, on July 29, 2024, the Parties engaged in arms'-length settlement negotiations during a full-day mediation conducted by Ms. Klosterman; and then continued to negotiate the Settlement with and without Ms. Klosterman's assistance. Leiden Decl. ¶¶ 9-11.

The Parties entered into the Settlement, which was finalized in January 2025, detailing a Compliance and Monitoring Period to ensure that CPHS achieves and maintains compliance with Title IX. *See* Ex. A, Settlement Agreement.

Balancing the benefits of the proposed Settlement against the risks and delays of further litigation, Class Counsel have determined the proposed Settlement provided herein is fair, reasonable, and in the best interest of Class Members. Defendant has also concluded the proposed Settlement is fair and reasonable, considering the substantial expenses of protracted litigation.

## 3. TERMS OF THE PROPOSED SETTLEMENT

Pursuant to the proposed Settlement between Plaintiffs and Defendant, Class Members will benefit from foundational changes within the school district, designed to ensure Title IX compliance and promote equity for girls' athletic programs. These include implementation of a monitoring period; equitable access to equipment, supplies, and facilities; compliance with Title IX requirements; and comprehensive training initiations for administrators, coaches, and board members. The following summarizes the principal terms of the proposed Settlement:

### A. Settlement Class (Ex. A § I.B)

The settlement class[2] certified by the Court (Dkt. 26) is defined as follows: "All present and future College Park High School ('CPHS') female students and potential students who participate, seek to participate, and/or are or were deterred from participating in athletics at CPHS (the 'Class'.)" Dkt. 23.

### B. Settlement Consideration and Release of Claims (Ex. A § II.D)

In exchange for a release of all claims[3] and defenses based upon the events giving rise to this Action, the Settlement provides for injunctive relief that will fundamentally restructure CPHS' athletic programs and facilities, ensuring Title IX compliance. CPHS's female athletes will receive equitable participation opportunities, treatment and benefits which include, but are not limited to: equipment and supplies; scheduling of games and practice time; quality and number of coaches; locker rooms, practice, training, and competitive facilities; and publicity. *See also* 34 C.F.R. § 106.41(c)(1)–(10).

### C. Training and Professional Development (Ex. A § III.B)

Within 60 days of the Commencement Date[4] and throughout the Term, Defendant will provide

---

[2] There are no differences between the settlement class and the certified class. *See* Procedural Guidance § 1(a), https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.
[3] There are no differences between the claims to be released or the claims certified for class treatment. *See* Procedural Guidance § 1(c).
[4] Commencement Date is triggered upon (1) execution of the Settlement Agreement by the relevant parties and (2) formal approval of the Settlement by Defendant's Board of Trustees.

mandatory Title IX training to all CPHS coaches each sports season, administrators annually, and current and new Board members within six months of the Commencement Date or taking office. Additionally, all CPHS athletes will annually receive Title IX rights information, including a brochure approved by the Title IX Consultant. The Title IX Consultant provision is further explained below in section 3.F.1.

### D.     Equal Treatment and Benefits (Ex. A § III.C)

Defendant shall ensure that female athletes at CPHS are provided equal treatment and benefits as compared to male athletes in each athletic sport, program, service and facility at CPHS, regardless of the source of such treatment and benefits (*e.g.*, donations, team fundraising, coach's property, procurement with school funds). Facilities and services shall be provided on an equitable basis for girls in consideration of the entirety of the sports offerings at CPHS, and shall be equal in terms of amenities, functionality, and overall quality. To the degree permitted by applicable law, Defendant shall ensure priority of CPHS facilities for CPHS athletics over private leagues or Pleasant Hill Park & Recreation. Defendant shall ensure gender equity for female student-athletes at CPHS in the following categories, including but not limited to: (1) equipment and supply; (2) comprehensive inventory review and reevaluations (outlined in Attachment A of Exhibit A); (3) coaching; (4) travel and transportation; (5) practice and competitive facilities; (6) scheduling practices games and facilities; (7) maintenance of athletic facilities; (8) equitable access to locker and team rooms, weight room, practice facilities, and competitive facilities; (9) storage; (10) restrooms; (11) softball; (12) publicity and promotional support; (13) medical training facilities and services; and (14) fundraising.

### E.     Equal Participation Opportunities (Ex. A § III.D)

Defendant shall ensure that CPHS female students are provided equal participation opportunities in athletics by complying with the first or third prongs of the Title IX Three Prong Test, as outlined in 34 C.F.R. § 106.41(c).

In addition, Defendant shall conduct an annual survey of CPHS student athletics interests with a focus on discovering which teams/sports/levels its female students would like to participate in in greater numbers. A sample survey is attached as Attachment C to Exhibit A. Defendant will also actively recruit female students to CPHS sports by ensuring equal promotion of female athletics opportunities across all CPHS media and presentations. This includes informing head coaches of their responsibility to promote

female sports equally, monitoring try-out and team lists to ensure adequate female participation, and conducting regular announcements and demonstrations for female sports at school events in equal measure to male sports. If the Title IX Consultant determines that CPHS does not provide equal participation opportunities to its female athletes, Defendant shall identify sports not currently offered at CPHS but available at competing or nearby schools, and add teams or levels based on sufficient interest from female students and available competition in the CIF North Coast Section, unless budgetary requirements otherwise necessitate a reduction of male sports to ensure equality.

  **F.**  **Title IX Compliance and Monitoring Plan (Ex. A § III.E)**

  During the period beginning on the Effective Date[5] and continuing for four years thereafter, (hereinafter "Compliance and Monitoring Period"), Defendant will ensure that athletic participation opportunities and treatment and benefits for girls at CPHS comply with the proposed Settlement. The Compliance Plan includes, but is not limited to, the following components:

  **1.**  **Title IX Consultant**. Defendant will retain a Title IX Consultant to inspect, gather data, evaluate, report, and make recommendations to ensure CPHS complies with Title IX and the terms of the Settlement. The Title IX Consultant will be compensated by Defendant, not to exceed $175,000 for the full term of the agreement. The term of the Title IX Consultant will run from contract execution to the end of the Compliance and Monitoring Period, unless the Court extends jurisdiction beyond this period.

  **2.**  **Compliance Reports**. Defendant shall prepare Compliance Reports at the end of each season of sport (Fall, Winter, and Spring) to the Title IX Consultant. Each Compliance Report shall include, but is not limited to, the following information:

  **a.**  *Student Enrollment, Participation, and Interest*. The Compliance Reports will incorporate all relevant data to demonstrate Title IX compliance to achieve equal participation opportunities. This includes data of student enrollment and participation for the corresponding academic year broken down by sport played, level (*e.g.*, varsity, junior varsity, etc.), gender, and season. Additionally, copies of

---

[5] Effective Date is triggered upon (1) satisfying the criteria for the Commencement Date and (2) Court approval of the Settlement.

completed athletics interest surveys based on Attachment C to Exhibit A shall be provided.

    b.    *Athletics Resources*. The Compliance Reports will incorporate Defendant's assessment and report on equipment inventories and facility conditions for male and female athletes, covering each athletics team and level (freshman, junior varsity, and varsity). The review will address the quantity, quality, and size of uniforms and other wearable items; practice and competition equipment; additional equipment for athletes' benefit; and the age of items on a replacement schedule. If Defendant identifies any disparities, it will provide the Title IX Consultant with a plan to correct them. Additionally, Defendant must share materials given to athletes on Title IX rights and confirm distribution methods. Information on medical and athletic training benefits offered and utilized will also be provided, excluding any information protected by privacy rights.

    c.    *Athletics Program and Schedules*. The Compliance Reports will incorporate annual maintenance schedules for CPHS athletics facilities, comprehensive game and practice schedules for all teams across fall, winter, and spring seasons, weight room schedules organized by sport, level, gender, and season, and attendance schedules for CPHS band and sideline cheer (and similar activities) at athletics events.

    d.    *Coaching and Staffing Information*. The Compliance Reports will include a list of all CPHS coaches categorized by sport, level, and season. They will also provide information on coaching recruitment for on-campus teachers and off-campus walk-on coaches for all teams. Completed surveys from coaches across all athletic teams and levels based on the survey provided in Attachment B to Exhibit A will also be included.

    e.    Budget and Funding. The Compliance Reports will include annual budgets and expenditures for all CPHS athletics teams, covering funds raised by booster clubs and any actual income, expenditures, and donations per sport team and level.

   Defendant must request all athletic teams and booster clubs to retain and share budgeting data. Fundraising opportunities, publicized events, and identified gender inequities must also be reported.

   f. Student Information and Promotion. The Compliance Reports will include copies of all CPHS sports-related yearbook pages and promotional materials, including daily bulletin announcements for each team, from the previous school year.

   g. Title IX Training and Certification. The Compliance Reports will include copies of the certification confirming completion of the Title IX training, training materials (including PowerPoints, handouts), and sign-in sheets for the Title IX trainings.

   h. Progress Updates. The Compliance Reports will include updates on progress related to CPHS improvements that Defendant is making or will make pursuant to the agreements reached in this Statement of Commitment.

## 4. THE PROPOSED SETTLEMENT MEETS RULE 23(E) FOR FAIRNESS, REASONABLENESS, AND ADEQUACY

Rule 23, subdivision (e) provides that a certified class's claims may be settled "only with the court's approval." The court may approve a settlement proposal binding class members "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement; rather, preliminary approval assesses whether the proposed settlement falls within the "range of possible approval" or "range of reasonableness." *Vasquez v. USM Inc.*, 2015 WL 12857082, at *2 (N.D. Cal. Apr. 13, 2015). Preliminary approval establishes an "initial presumption of fairness, such that notice may be given to the class and the class may have a full and fair opportunity to consider the proposed [settlement] and develop a response." *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 399221, at *1 (N.D. Cal. Jan. 19, 2017) (internal quotation and citation omitted).

Under Rule 23, subdivision (e)(2), courts consider various factors to determine whether a settlement is fair, reasonable, and adequate, including whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23, subdivision (c)(3); and

(D) the proposal treats class members equitably relative to each other.

Additionally, the Ninth Circuit has adopted a "non-exhaustive list of factors that a district court may consider when weighing a proposed settlement." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). These factors include: (1) "the strength of the plaintiffs' case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of discovery completed and the stage of the proceedings"; (6) "the experience and views of counsel"; (7) "the presence of a governmental participant"; and (8) "the reaction of the class members to the proposed settlement." *Id.* at 610 n.18.

### A.     Named Plaintiffs and Class Counsel Adequately Represented the Class.

Named Plaintiffs and Class Counsel have adequately represented the class throughout this litigation.  Class counsel comprises a team of qualified and experienced counsel from two law firms and two non-profit organizations with experience in Title IX matters, each of whom has diligently protected Class Members' interests at every stage. Class Counsel have extensive experience in Title IX litigation and advocacy. They have thoroughly evaluated the claims, performed on-site investigations, engaged in informal discovery, successfully certified the Class, and negotiated the settlement terms to ensure that the Settlement fairly and adequately addresses the needs and rights of all Class Members. Leiden Decl. ¶¶ 5-11. Class Counsel's strong qualifications and experience have served Class Members throughout this litigation. Named Plaintiffs have likewise dedicated substantial time consulting with Class Counsel; reviewing drafts of documents; collecting and presenting messages, photos, and communications related to Title IX violations; and preparing for and attending mediation. Leiden Decl. ¶¶ 12-13. This zealous representation supports preliminary approval. *See* Fed. R. Civ. P. 23(e)(1)(A).

### B. The Settlement Agreement resulted from arm's-length negotiations.

The Settlement is the product of sustained negotiations between experienced counsel with a track record of success in cases involving Title IX violations in high school athletics programs. These negotiations occurred at arm's length, over many sessions, including before former United States Department of Education, Office for Civil Rights Attorney Amy Klosterman. Leiden Decl. ¶¶ 7-11. Having worked on this case from the inception to the present, the Parties have a clear understanding of the risks, expense, complexity, and likely duration associated with further litigation. The Parties' determination that the settlement is fair and reasonable is afforded "great weight" in the settlement approval analysis. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) (observing that "competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation"). Particularly, in this circumstance, "[w]here a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010). Accordingly, the requirements of Fed. R. Civ. P. 23(e)(1)(A) are satisfied, supporting preliminary approval.

### C. The Settlement provides extraordinary relief for the Class Members.

Preliminary approval requires consideration of whether the "relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C). The Settlement remedies Defendant's longstanding and ongoing Title IX violations and allows named Plaintiffs, along with many more female athletes like them who attend CPHS, to gain equal access to and experience with sports opportunities and benefits on par with their male CPHS counterparts. Leiden Decl. ¶ 14, Exhibit B, Jan. 8, 2025 email from Dr. Adam Clark, superintendent of Mt. Diablo Unified School District (stating in email to "Students, Families, and Staff" that "the findings that led to this agreement highlight unacceptable inequities that have persisted for far too long."). Given the inherent risks, delays, and expenses associated with trial and potential appeals against Defendant, a governmental participant, the injunctive relief secured through this Settlement provides effective and foundational changes, avoiding the uncertainty of litigation. Fed. R. Civ. P. 23(e)(2)(C)(i). As discussed above in Section 3.A-F, the injunctive relief will be implemented through

clearly defined measures, including policy updates and staff training, with oversight mechanisms to ensure compliance and effectiveness. Fed. R. Civ. P. 23(e)(2)(C)(ii).

Notably, this Settlement aligns with other multi-year injunctive relief measures addressing Title IX violations in athletic programs within academic institutions. For instance, in *A.B. v. Hawaii State Department of Education*, the plaintiffs brought similar claims as those in this case, resulting in a court-approved, seven-year compliance and monitoring plan that includes the appointment of an independent evaluator; improvements to facilities, equipment, or coaching resources; compliance policies; and reporting requirements. No. 1:18CV00477, Dkt. 331-1 (D. Haw. Mar. 5, 2024). Similarly, in *Working et al. v. Lake Oswego School District*, the plaintiffs brought similar Title IX athletics claims, leading to a court-approved, three-year compliance period including equitable budgeting, facilities, coaching, training, scholarships, and policies; along with mechanisms for oversight, and recognition of female athletes' achievements. No. 3:16CV00581, Dkt. 48 (D.Or. Oct. 3, 2017).

The Settlement, here, follows these precedents to provide for an improved system at CPHS to achieve Title IX compliance, thereby allowing its female athletes to be afforded equitable treatment and benefits and participation opportunities. Thus, the Settlement provides extraordinary relief for class members to ensure their right to an equal opportunity to participate fully and equitably in high school athletic programs comparable to their male counterparts. *See* Fed. R. Civ. P. 23(e)(2)(C).

### D.   The Settlement treats Class Members Equitably

In addition to evaluating the overall adequacy of the Settlement, the Court should consider whether the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Class Members are treated equitably relative to each other when they "receive identical injunctive relief." *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 895 (N.D. Cal. 2020), aff'd sub nom. *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102 (9th Cir. 2021); *see also Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC,* 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) (A settlement agreement is favored for approval when the settlement class "will receive exactly the same injunctive relief.")

Here, the Settlement ensures equitable treatment for all CPHS female athletes by providing foundational changes to CPHS's athletic programs that benefit all present and future class members.

There is no risk of disparity, as the oversight of an unbiased Title IX consultant will ensure that CPHS's athletic programs remain Title-IX-compliant. This will guarantee sustained and meaningful improvements in facilities, resources, and opportunities, fostering an environment of fairness and inclusivity across all class members. Therefore, Fed. R. Civ. P. 23(e)(2)(D) is satisfied, supporting preliminary approval.

## 5. PROPOSED NOTICE TO CLASS SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23 also asks the reviewing court to "direct notice in a reasonable manner" to all class members bound by the proposed settlement if it is likely the court will approve the settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Notice is sufficient if it "generally describes the terms of the settlement" such that potential objectors are adequately alerted. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

The proposed class notice (Attachment D to Exhibit A) satisfies the requirements of due process by informing Class Members of the proposed Settlement, the procedure for commenting on the proposed Settlement, the date and place of the Fairness Hearing, thereby affording them the opportunity to be heard. Upon the Court's approval, the class notice will be distributed by the Defendant: (i) individually to each member of the class and (ii) by posting on CPHS's website and the District's website. *See* Ex. A § III.F.3. The proposed Class Notice satisfies due process requirements.

## 6. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that their unopposed motion for Preliminary Settlement Approval be granted.

1 | Dated: February 6, 2025

2 | **WINSTON & STRAWN LLP**

3

4 | By */s/ Diana Hughes Leiden*
   |    Diana Hughes Leiden

5 | Dana L. Cook-Milligan (SBN 301340)
   | Eric Straka (SBN 336307)
6 | Jacqueline Ju (SBN 352204)
   | **WINSTON & STRAWN LLP**
7 | 101 California Street, 21st Floor
   | San Francisco, CA 94111
8 | Telephone: (415) 591-1000
   | dlcook@winston.com
9 | estraka@winston.com
   | jju@winston.com
10

11 | Diana Hughes Leiden (SBN 267606)
   | Whitney Williams (SBN 335384)
   | **WINSTON & STRAWN LLP**
12 | 333 South Grand Avenue, 38th Floor
   | Los Angeles, CA 90071
13 | Telephone: (213) 615-1700
   | dhleiden@winston.com
14 | whwilliams@winston.com

15 | Elizabeth Kristen (SBN 218227)
   | **LEGAL AID AT WORK**
16 | 180 Montgomery Street, Suite 600
   | San Francisco, CA 94104
17 | Telephone: (415) 864-8848
   | ekristen@legalaidatwork.org
18

19 | Julianna Gesiotto (SBN 346885)
   | julianna.gesiotto@cwlc.org
   | **CALIFORNIA WOMEN'S LAW CENTER**
20 | 360 N. Pacific Coast Highway, Suite 2070
   | El Segundo, CA 90245
21 | Telephone: (323) 951-1041

22 | Aaron D. Kaufmann (SBN 148580)
   | Elizabeth Gropman (SBN 294156)
23 | **KAUFMANN & GROPMAN LLP**
   | 1939 Harrison Street, Suite 620
24 | Oakland, CA 94612
   | Telephone: (510) 817-4380
25 | akaufmann@kgworklaw.com
   | egropman@kgworklaw.com
26
   | *Attorneys for Plaintiffs*
27

28